UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4116(DSD/JJG)

Diane Wattenhofer,

      Plaintiff,

v. **ORDER**

Target Corporation,

      Defendant.

    Robert J. Leighton, Jr., Esq. and Nolan, MacGregor, Thompson & Leighton, 380 St. Peter Street, Suite 710, St. Paul, MN 55102, counsel for plaintiff.

    Deborah A. Ellingboe, Esq., Megan S. Clinefelter, Esq. and Faegre & Benson, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This disability benefits dispute arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. In January 1996, plaintiff Diane Wattenhofer ("Wattenhofer") began working as a pharmacist for defendant Target Corporation ("Target"). Target administers a long-term disability plan ("Plan") governed by ERISA. Target also self-insures the Plan

through a trust fund from which benefits are paid. (Admin. R. at 1399.) Principal Financial Group ("Principal") is the plan manager and conducts initial investigations, determines employees' eligibility for benefits, pays claims and reviews first-level appeals of its decisions. Target considers second-level appeals.

Under the Plan, a Target employee is entitled to long-term disability ("LTD") benefits if she has a "qualified disability." (Id. at 8.) Following the first twenty-four months of benefit payments, the Plan defines "qualified disability" as a condition that "prevent[s] [an employee] from performing any work or occupation for which [she is], or may become, reasonably fitted by education, training, or experience which will provide an income equal to or greater than 128% of the LTD benefit." (Id.) The Plan grants Target "full discretionary authority to make any and all factual determinations necessary to determine eligibility for benefits or the amount of any benefits [and] to construe the terms of the Plan." (Id. at 41.)

In August 2001, Wattenhofer developed swelling in her right arm and in October 2001, doctors discovered a clot in her right subclavian vein. Wattenhofer was later diagnosed with thoracic outlet syndrome. In November 2001, Wattenhofer also began to experience dizziness and nausea. Due to these conditions, Wattenhofer stopped working on December 11, 2001.

Between April 2002 and December 2004, Wattenhofer underwent three surgeries to relieve the conditions of thoracic outlet syndrome. None of the surgeries proved successful. Wattenhofer also sought medical attention for her continued episodes of vertigo and was diagnosed with vestibular Meniere's disease on May 12, 2003. Target granted Wattenhofer LTD benefits on May 10, 2002.

Target discontinued Wattenhofer's LTD benefits on February 9, 2006, after a review of her medical records indicated that she no longer met the Plan's definition of "qualified disability." (Id. at 50.) After her initial appeal was denied, Wattenhofer filed a second-level appeal with Target on June 8, 2007. In response, Target hired a physician to review Wattenhofer's file and produce a report. On July 25, 2007, Target informed Wattenhofer by letter that it had denied her claim for LTD benefits and provided her a copy of the physician's July 18, 2007, report.

Wattenhofer brought this ERISA action against Target and Principal[1] on September 26, 2007, challenging the denial of her LTD benefits. The parties filed cross-motions for summary judgment on July 29, 2008. On October 10, 2008, the court granted Wattenhofer's motion for summary judgment in part. (Doc. No. 32.) In that order, the court determined that Target had denied Wattenhofer a full and fair review under ERISA by not providing her

---

[1] The court dismissed Principal from this case on October 10, 2008. (Doc. No. 32 at 4 n.1.)

an opportunity to respond to the July 18, 2007, report prior to denying her second-level appeal. (Id. at 5-6.) The court therefore remanded the case to Target with instructions to reopen the administrative record and permit Wattenhofer an opportunity to respond. (Id. at 6.)

On November 19, 2008, Wattenhofer sent Target a letter response to the July 18, 2007, report. (Leighton Aff. Ex. A.) After reviewing Wattenhofer's response, Target again considered her eligibility for LTD benefits and issued a final decision denying her claim on December 17, 2008. (Id. Ex. B.) In April 2009, the parties again filed cross-motions for summary judgment.

## DISCUSSION

**I. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the

evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Full and Fair Review**

As an initial matter, Wattenhofer argues that Target's December 17, 2008, letter denied her a full and fair review. ERISA requires that plan procedures "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review ... of the decision denying the claim." 29 U.S.C. § 1133(2). After the court remanded this case to Target on October 10, 2008, however, the Eighth Circuit decided Midgett v. Washington Group International Long Term Disability Plan, 561 F.3d 887 (8th Cir. 2009). In Midgett, the Eighth Circuit held that a full and fair review "does not include reviewing and rebutting, prior to a determination on appeal, the opinions of peer reviewers solicited

on that same level of appeal." 561 F.3d at 896. Pursuant to Midgett, Wattenhofer was not entitled to review and respond to the July 18, 2007, report prior to Target's determination of her second-level appeal. Through its December 17, 2008, letter, Target actually provided Wattenhofer more consideration than what is now required by Eighth Circuit law. See id. Therefore, in light of this change in Eighth Circuit law, Wattenhofer's argument that Target denied her a full and fair review fails.

**III. Denial of Benefits**

    **A.    Standard of Review**

Under ERISA, a plan participant may bring a civil action to "recover benefits due to her under the terms of her plan." 29 U.S.C. § 1132(a)(1)(B). Where an ERISA plan grants discretionary authority to the plan administrator to determine eligibility for benefits, as here, the court reviews an administrator's decision to deny benefits for abuse of discretion. See Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2350 (2008) (deferential standard of review applies to discretionary decision-making) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 581 (8th Cir. 2008). Under that standard, the court will uphold Target's benefits decision if it was supported by substantial evidence. See McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Id. (internal quotation and citation omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. See id. (citation omitted).

Furthermore, in cases such as this, where the plan administrator both determines an employee's eligibility for benefits and pays those benefits, a conflict of interest exists and the court must weigh that conflict as a factor when determining whether an abuse of discretion occurred. See Chronister v. Unum Life Ins. Co. of Am., 563 F.3d 773, 775-76 (8th Cir. 2009). The amount of weight the court attributes to the conflict depends on the circumstances of the case. The court will consider the conflict "more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." Hackett v. Standard Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009) (quotation and citation omitted).

In this case, Target took several steps to reduce bias and promote the accurate administration of the Plan. First, Target hired a third party, Principal, to conduct initial investigations, determine eligibility, pay claims and review first-level appeals.

7

Principal did not fund the Plan and had no monetary interest at stake in the benefits decisions. (Admin. R. at 1399.) Second, Target established a trust fund to pay the claims, thereby reducing any financial incentive it had to deny claims. Third, the persons who evaluated Wattenhofer's second-level appeal were not involved in the creation, funding or administration of the Plan's trust fund. (Id.; Boyd Aff. ¶¶ 2-5.) In addition, those persons were compensated regardless of whether they granted or denied claims. (Boyd Aff. ¶ 5.) In light of these circumstances, the court determines that it is unlikely that Target's conflict of interest affected its denial of Wattenhofer's claim. Cf. Chronister, 563 F.3d at 776 (financial conflict of interest given greater weight due to plan administrator's "disturbing pattern of erroneous and arbitrary benefit denials, bad faith contract misinterpretations and other unscrupulous tactics.") (citation omitted); Anderson v. Nationwide Mut. Ins. Co., 592 F. Supp. 2d 1113, 1126 (S.D. Iowa 2009) (financial conflict of interest given greater weight when no steps taken to minimize interest of claims administrators in firm finances). Therefore, the court attributes minimal weight to the conflict when evaluating whether Target abused its discretion.

**B. Substantive Review**

In this case, substantial evidence supported Target's decision to terminate Wattenhofer's LTD benefits. The July 18, 2007, report concluded that Wattenhofer "was not totally disabled as a

pharmacist" and that "she could work a sedentary job that allows flexibility movement [sic] as needed." (Admin. R. at 18.) Other reports reached similar conclusions. For instance, in a November 6, 2006, report, a doctor found that Wattenhofer could "return to work to a light duty position." (Id. at 316.) A July 20, 2005, medical review concluded that Wattenhofer "appears to be capable of sedentary work on a full time basis." (Id. at 406-08.) Two months later, a physical therapist stated that Wattenhofer "is capable of working eight hours per day in the light category," which allowed for exertion of "up to twenty pounds of force occasionally and up to ten pounds of force constantly to move objects." (Id. at 319.) On December 22, 2005, an "Employability Assessment - Labor Market Survey" found that "[m]ultiple employment opportunities for sedentary level work exist for Wattenhofer within her occupation of pharmacist." (Id. at 62.) The Survey noted that such occupations, which include "Clinical Program Manager, Clinical Pharmacist, Utilization Manager Pharmacist and Benefits Pharmacist," among others, garnered a yearly salary of $85,000 to $115,000. (Id.) Lastly, surveillance videos taken in November 2003, April 2004, and July and September 2005 documented Wattenhofer engaging in physical activities such as walking, standing, bending, lifting, carrying, pushing a shopping cart, entering and exiting a vehicle and driving. (Id. at 680-704.) A reasonable person would accept the above evidence as adequate to support Target's conclusion that

9

Wattenhofer could perform sedentary work. See McGee, 360 F.3d at 924.

Wattenhofer argues, however, that Target did not give proper deference to the opinions of her treating physicians, who maintain that she is totally disabled. (Admin. R. at 124-26.) Treating physicians, however, are "not automatically entitled to special weight in disability determinations under ERISA." Midgett, 561 F.3d at 897. Rather, a "plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physician unless the record does not support the denial." Id. (quotation and citation omitted). As noted above, ample evidence supported Target's decision to credit the opinions of its reviewing physicians over Wattenhofer's doctors. Therefore, the court concludes that Target did not abuse its discretion when it denied Wattenhofer's claim.

**CONCLUSION**

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Doc. No. 39] is denied; and

2. Defendant's motion for summary judgment [Doc. No. 42] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 2, 2009

                                        <u>s/David S. Doty</u>
                                        David S. Doty, Judge
                                        United States District Court